UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| SEA GREEN HOLDINGS, LLC | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:18-CV-00264 (MPS) |
| v. | : | |
| | : | |
| ANGERA et al | : | |
| | : | |
| Defendants. | : | MARCH 14, 2018 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

The Defendant Andrea A. Angera, Jr.'s ("Angera") removal of this case was improper because there is no legal basis supporting removal. In the Notice of Removal [Doc. 1], the Defendant Angera claims that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and ancillary and/or supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In law and fact, the Court lacks jurisdiction under both statutes, and this matter should be remanded to the Connecticut Superior Court for continued proceedings. Furthermore, the record indicates that the removal was objectively unreasonable and made in bad faith. Therefore, the Plaintiff should be awarded costs and expenses (including attorney's fees) pursuant to 28 U.S.C. § 1447(c).

**FACTUAL BACKGROUND**

In February 2017, the Plaintiff Sea Greens Holdings, LLC ("Sea Greens") entered into an agreement with the Defendant Tikal Consulting Company, LLC ("Tikal"), a Connecticut limited liability company, such that Angera, the principal and sole member of Tikal,[1] would provide

---

[1] Angera is an attorney licensed to practice in New Jersey and Pennsylvania, and is authorized house counsel to Tikal in Connecticut.

1

specific consulting services to Sea Greens in order to manage the buildout and operation of Sea Greens' seaweed processing facility in New Haven, Connecticut, including the development of policies and procedures to implement Sea Greens' business objectives.  During the course of that agreement (and/or extensions thereto), Angera and Tikal failed to properly manage the buildout and operation of the facility and to fulfill their other obligations.  Instead, they misappropriated Sea Greens' confidential trade information (including but not limited to supplier and customer lists and confidential business practices) and, during the course of the agreement, used that confidential information in conjunction with Defendant Springtide Seaweed, LLC ("Springtide") to establish the Defendant Maine Seaweed Exchange ("Exchange," a direct competitor to Sea Greens) in September 2017, all the while intentionally undermining Sea Greens' business operations.

Sea Greens, a Delaware limited liability company with a principal place of business located in New Haven, Connecticut, commenced this proceeding (an application for a prejudgment remedy) on January 29, 2018, in the Connecticut Superior Court, New Haven Judicial District, by properly serving process on the Defendants:

- via abode service
- by certified mail to known mailing addresses
- at the office of the Secretary of the State of Connecticut, and
- as otherwise set forth on the return of service attached hereto as Ex. A.

In general, the proposed complaint alleged that Angera and his admitted alter ego, Tikal, breached their contractual and fiduciary duties to the Plaintiff through the above and related acts and, together with Springtide and the Exchange, misappropriated the Plaintiff's trade secrets in violation of the Connecticut Unfair Trade Practices Act and other sections of the Connecticut

2

General Statutes so as to unfairly compete with Sea Greens in the nascent seaweed industry in North America and beyond.

The prejudgment remedy application seeks security from Angera and Tikal in the amount of $1,077,000 due to the reasonable likelihood that Angera and Tikal are about to abscond from Connecticut based in part on Angera's sale of his motor vehicle and listing for sale of real property in his name.  Angera filed with the Connecticut Secretary of State articles of dissolution for Tikal on February 5, 2018, which became effective on February 7, 2018.  By notice dated February 10, 2018, only three days later, Angera (acting *pro se*) removed the matter to the District of Connecticut, alleging that the Court had diversity and supplemental jurisdiction and claiming therein that Tikal has been "fraudulently misjoined" in the action because it was a dissolved entity.  See Doc. 1 at 2, ¶ 10c.  In part, therefore, Angera relied on the supposition that Tikal had been dissolved as both grounds for complete diversity and to support an assertion that Sea Greens in some way acted fraudulently by including Tikal as a party.

The evidence shows quite the contrary, and on February 16, 2018, the Court ordered Angera to show cause why the matter should not be remanded [Doc. 5].  The Court specifically noted that Angera had failed to demonstrate complete diversity in the Notice of Removal by virtue of the members of the various LLC parties.  Furthermore, the Court noted that the face of the complaint indicated that Angera and Sea Greens were both Connecticut citizens, destroying diversity, and that 28 U.S.C. § 1441(b)(2) prohibited removal on the basis of diversity, as at least one of the defendants was a Connecticut citizen.  Finally, the Court recognized well-established law prohibiting artificial entities from proceeding *pro se*, and ordered the LLC defendants to provide proof of consent to removal <u>through counsel</u> within thirty days of the filing of the Notice of Removal.  As discussed herein, Angera's Response to Order to Show Cause [Doc. 12] is not

only insufficient to support removal, but actually shows that removal was improper and that this matter must be remanded.

**LEGAL ARGUMENT**

*I.     The Parties Lack Complete Diversity, and Thus Removal is Improper*

"The general rule requiring complete diversity between opposing parties is explicit and unequivocal." International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 (2d Cir. 1989). "[D]iversity is not complete if any plaintiff is a citizen of the same state as any defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990). Diversity is generally determined from the face of the complaint, and must exist at the time of removal. Gould v. Mut. Life Ins. Co. of New York, 790 F.2d 769, 773 (9th Cir. 1986). As a preliminary matter, the Complaint alleges that Angera and Tikal are Connecticut citizens, and that Sea Green's principal place of business is in Connecticut. As the Court noted in its Order to Show Cause, this alone destroys complete diversity and deprives this Court of jurisdiction, necessitating remand [Doc. 5 at Par. 3]; Gould, *supra.*

Even if the Court were to look beyond the face of the Complaint, it would see that complete diversity does not exist. The oft-stated rule is that diversity jurisdiction in a suit by or against an entity (such as a limited liability company) depends on the citizenship of all the members. Carden v. Arkoma Assoc., 494 U.S. 185, 195 (1990). Here, Angera's own representations in the Statement required by the Court's Standing Order on Removed Cases indicates that Sea Greens' four members are citizens of California, Connecticut, and Maine,[2] while the Exchange's member is a citizen of Maine and Springtide's members are citizens of Massachusetts and/or Maine. Furthermore, Angera has, in other court pleadings, represented to

---

[2] The Plaintiff agrees with this characterization of the citizenship of its members.

the Court that he is domiciled in (and therefore a citizen of) Maine. See Angera v. Greenwave et al., 3:17-01613 (MPS) at Doc. 17 at ¶ 1.[3] Since the Plaintiff includes a Maine member, and two of the Defendants include Maine members, diversity remains incomplete even if the Court looks beyond the pleadings, which again requires remand.

II.     *This Matter is Statutorily Barred from Removal by 28 U.S.C. § 1441(b)(2)*

As the Court recognized in its Order to Show Cause, "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). As above, the Complaint alleges that Angera is a Connecticut citizen. It also alleges that Tikal is a Connecticut LLC and, at all relevant times, Tikal's principal place of business is in Connecticut. Since the matter was initiated in Connecticut, Section 1441(b)(2) prohibits its removal.

While Angera claims that Tikal was dissolved, Angera also admits Tikal is a Connecticut citizen [Doc. 9, Par. 3a]. Further, the articles of dissolution for Tikal are effective February 7, 2018—more than a week after service was effected pursuant to Connecticut law. Ex. B. Furthermore, it is well-established, black letter law that a corporate entity (including an LLC) continues to exist post-dissolution for purposes of winding up, specifically including defending suits against itself. See Conn. Gen. Stat. §§ 34-208(b) (repealed as of July 1, 2017); 34-267a(b) (effective as of July 1, 2017). The filing of articles of dissolution for Tikal therefore has no effect on the question of diversity jurisdiction in this case, and is merely an attempt to

---

[3] The state of Angera's domicile is the subject of both a pending motion to dismiss and jurisdictional discovery in the matter of Angera v. Greenwave, et al., 3:17-01613.

manipulate the courts and cause undue delay while Angera and the remaining defendants continue to compete unfettered and undeterred with Sea Greens.

Finally, all Defendants were properly served under Connecticut law prior to removal. As a preliminary matter, Connecticut's prejudgment remedy statutes envision that some defendants will attempt to evade service. Indeed, one of the grounds for granting a prejudgment remedy in Connecticut is that there is a reasonable likelihood that a defendant "has hidden or will hide himself so that process cannot be served on him." Conn. Gen. Stat. § 52-278e(a)(1). This necessarily envisions that service of process may not be perfect in prejudgment remedy applications.

In this case, however, process was properly served on all Defendants. Angera's claims to the contrary, the courtesy of an email is not service of process, and does not somehow override the duly effected service conducted by Marshal Parillo; Angera was fully aware of the proceeding no later than February 2, 2018, the date of his letter to the state court. Doc. 9 at 3, Par. 4. The return of service indicates that Marshal Parillo served Angera and/or Tikal was served:

- At their place of abode at 156 West Street, Litchfield, Connecticut;
- At the office of the Connecticut Secretary of State pursuant to Conn. Gen. Stat. § 52-59b(c);[4]

---

[4] Conn. Gen. Stat. § 52-59b(c) appoints the Connecticut Secretary of State the agent of service for any nonresident individuals, foreign partnerships and voluntary associations that (1) transact any business within the state; (2) commit a tortious act within the state; (3) commit a tortious act outside the state that causes injury to any person or property within the state, provided such person or agent A) regularly does or solicits business or engages in any other persistent course of conduct in the state or B) expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer or a computer network located within the state. Under that statute, the serving officer must serve the Secretary

- By certified mail, postage prepaid, return receipt requested at:
    - P.O. Box 141, Port Clyde, Maine, 04855, the address which Angera had used in connection with the Amended Complaint in *Angera v. Greenwave et al.*, Docket No. 3:17-cv-01613-MPS;
    - 3 Muskoday Way, Edgartown, MA 02539, the address of property owned by Angera in Edgartown, MA;
    - 40 Avalon Lane, P.O. Box 1874, Litchfield, CT 06759 pursuant to Conn. Gen. Stat. § 34-243r(c);[5] and
    - 156 West Street, Litchfield, CT 06759 pursuant to Conn. Gen. Stat. § 34-243r(c).

While Angera has claimed to the state court that abode service at the 156 West Street was improper, his statement absolutely fails to address any of the other grounds for service set forth in the return. Tikal was served at its listed business address of 40 Avalon Lane, P. O. Box 1874, Litchfield, CT pursuant to § 34-243r(c). See Exs. A & J. Per that section, service is effected the earliest of 1) the date of receipt by the company, 2) the date shown on the return receipt, if signed by the company, or 3) five days after its deposit with the post office. The return of service indicates that process was deposited with the post office per § 34-343r(c) on January 29, 2018, meaning service was effective against Tikal per that statute no later than February 3, 2018

---

of State with the process, and after the Secretary endorses such process, must then mail (certified, postage prepaid, return receipt requested) the process to the defendant at their last known address.

[5] Conn. Gen. Stat. § 34-243r(c) permits a limited liability company to be served at its principal office by certified mail, return receipt requested, if its registered agent cannot with reasonable diligence be served. Per that statute, the address for service is the address shown in the most recent Secretary of State filings. In this instance, the Secretary of State's records indicate that Angera was Tikal's agent of service and that both Angera and Tikal's business and mailing addresses are 40 Avalon Lane, P.O. Box 1874, Litchfield, CT 06759. See Ex. J.

(i.e., before Angera dissolved Tikal), even if the process was not received or signed for by the company, and even if all other service was somehow improper.

Angera, likewise, was served through multiple mechanisms. Even if 156 West Street were not Angera's place of abode, if at the time of service he were a nonresident of Connecticut—as he has repeatedly claimed to Courts in both this matter and *Angera v. Greenwave*—he would be subject to the service provisions of Conn. Gen. Stat. § 52-59b(c). In this matter, the return indicates that Marshal Parillo received the endorsement of the Secretary of State on January 29, 2018, and that day mailed (certified mail, return receipt requested, postage prepaid) process to Angera at both the Maine address he has used in *Angera v. Greenwave* and the address of property he owns in Edgartown, Massachusetts. Either address would qualify as Angera's last known address; thus, service at those addresses would constitute proper service pursuant to § 52-59b(c)[6] even if all other service were somehow improper. That Angera was also given the courtesy of an additional email to further advise him of the underlying proceedings has no impact on the analysis concerning service; rather, it simply shows Angera and Tikal, his alter ego, had notice of the proceedings, which he took full advantage of when he emailed the state court judge on February 2, 2018. See Doc. 9 at 3, ¶ 4.

### III.   *Not All Defendants Have Consented to the Removal of this Matter*

"[C]ourts have consistently interpreted 28 U.S.C. § 1446 as requiring that all defendants consent to removal within the statutory thirty-day period." *Beatie & Osborn LLP v. Patriot Sci. Corp.,* 431 F. Supp. 2d 367, 383 (S.D.N.Y. 2006). As the Court noted in its Order to Show Cause, corporations cannot act *pro se*, and the Notice of Removal did not indicate any consent from the Defendant LLCs except by Angera's *pro se* representation as to consent. The Court

---

[6] The Exchange and Springtide were also both served pursuant to Conn. Gen. Stat. § 52-59b(c).

therefore required the Defendant LLCs to provide proof of consent to removal <u>through counsel</u> within thirty days of the filing of the Notice of Removal—March 15, 2018.  As of March 15, 2018, that consent has not been provided, which again requires remand.

The sole evidence of consent through purported counsel from Tikal, Springtide, or Exchange is Angera's representation that he is (or, in the case of Tikal, was) General Counsel to the various LLC Defendants, and was therefore authorized to consent on their behalf.  Angera specifically stated that "as General Counsel to all the limited liability Defendants *[sic]* he is acting as both a principal and attorney for the limited liability Defendants *[sic]*" and signed the Response "*Pro Se* and as General Counsel for the Limited Liability Defendants" [Doc. 12 Par. 5]. As an attorney, Angera is certainly expected to know and understand the licensing requirements of the jurisdictions in which Angera does or would like to practice law.  However, while Angera claims that he serves as General Counsel to Exchange and Springtide and was General Counsel to Tikal, there is absolutely no indication that he is licensed to practice law in Maine or permitted to represent Tikal in the District of Connecticut.  <u>See</u>, <u>e.g.</u>,  Ex. F.

Connecticut has recognized specific licensing provisions for in-house counsel.  Pursuant to Conn. Prac. Bk. § 2-15A, "authorized house counsel" are, if registered with the Connecticut Bar Examining Committee, permitted to practice law in Connecticut on behalf of an organization.  However, that permission is limited pursuant to Conn. Prac. Bk. § 2-15A(c)(1). Conn. Prac. Bk. § 2-15A(c)(1)(C) allows the authorized house counsel to represent the organization in its dealings with administrative agencies, tribunals, and commissions, but forbids their appearance in any court of Connecticut unless the attorney is specially admitted to appear. No motion for admission *pro hac vice* or similar permission to appear on behalf of Tikal has been filed, much less granted, and Angera is therefore forbidden from acting on Tikal's behalf in

this matter.  There is also absolutely no indication that Angera has been admitted to practice before the District of Connecticut.  Therefore, his signing of the Response "as General Counsel" for Tikal likely constitutes the unauthorized practice of law, and Tikal's purported consent is invalid.  It certainly does not qualify as consent through counsel, as required by the Court.

An even greater flaw appears in Angera's purported representation of Exchange and Springtide.  Maine, unlike Connecticut, does not have registration or licensure provisions specifically tailored to in-house counsel licensure.  However, Rule 5.5 of the Maine Rules of Professional Conduct (in all relevant ways identical to Rule 5.5 of the American Bar Association's Model Rules of Professional Conduct) permits lawyers admitted in another state to provide legal services to the lawyer's employer in Maine.  Maine RPC 5.5(d), attached as Ex. C.  Comment 17 to that Rule notes that registration of such lawyers is required, and the Maine New Attorney Registration Form (Ex. D) specifically calls for identification of registering attorneys as in-house counsel if appropriate.  This comports with Rule 4(b) of the Maine Bar Administrative Rules (Ex. E), which requires every lawyer practicing in Maine to file annual registration documents.

The State of Maine's attorney lookup has no record whatsoever of Angera registering in Maine or otherwise being permitted to practice law in Maine.  See Ex. F.  Furthermore, inquiries directly to the Maine Board of Overseers at the Bar indicate that there is no record of Angera ever registering in Maine as in-house counsel or otherwise being permitted to practice law.  Again, because he is not permitted by Maine to serve as in-house counsel or otherwise practice law, he is not permitted to consent on behalf of Exchange or Springtide as indicated in the Response to Order to Show Cause.  His signature on behalf of those LLCs is invalid, and also likely constitutes the unauthorized practice of law.  Again, it certainly does not qualify as the

consent through counsel required by the Court. As a trained and educated attorney, Angera undoubtedly knows this, but has instead used his knowledge as an attorney to manipulate the judicial system to his own ends.

## IV.     All Parties to This Action are Properly Joined

Angera claims, in his Response to Order to Show Cause [Doc. 12 Par. 3], that the fraudulent misjoinder doctrine applies to this case, preventing remand. As a preliminary matter, Angera has offered absolutely no analysis of the fraudulent misjoinder doctrine[7] except to note that it exists: the Response to Order to Show Cause does not indicate what parties, if any, were fraudulently misjoined; does not review the claims and allegations of the complaint in regards to those parties; and does not apply or even state the elements of the fraudulent misjoinder doctrine. This is particularly troublesome in light of the nuanced distinctions between the fraudulent joinder doctrine, not asserted by Angera, and the fraudulent misjoinder doctrine which was asserted by Angera.

---

[7] There are two other issues, outside of fraudulent misjoinder, which Angera has raised but failed to analyze, which are dispensed with here for the sake of brevity. First, Angera claims in Par. 3 of the Response to Order to Show Cause that the filing of this action in the state court constitutes invalid state action barred by the Supreme Court's holding in Terral v. Burke Constr. Co., 257 U.S. 529 (1922). The Terral case dealt with the constitutionality of a state statute revoking the business licenses of out-of-state corporations if they removed lawsuits to federal court without the consent of all parties. The Terral doctrine is so inapposite to the matter at hand as to be totally irrelevant to the issues presented here, and Angera has presented no argument whatsoever indicating how the filing of a request for prejudgment attachment in state court is somehow violation of his or Tikal's constitutional rights.

Second, Angera argues that remand in this matter would be the equivalent of abstention pursuant to the Colorado River doctrine. Colorado River Water Conserv. Dist. v. U.S., 424 U.S. 800 (1976). Colorado River abstention, just like all abstention doctrines, is the refusal of a federal court to exercise jurisdiction over a case it otherwise properly would have jurisdiction over, in order to avoid interfering with (or, in the case of Colorado River abstention, wastefully duplicating) related state proceedings. The Colorado River doctrine is inapplicable to a matter such as this one, whereby the federal court lacks jurisdiction in the first place.

11

The fraudulent <u>joinder</u> doctrine prohibits plaintiffs from defeating diversity jurisdiction by joining as defendants parties with no real connection with the controversy. Demonstrating fraudulent joinder requires a defendant to prove:

> "by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." <u>Pampillonia v. RJR Nabisco Inc.</u>, 138 F.3d 459, 461 (2d. Cir. 1998).

Angera does claim that parties were improperly joined, and thus appears to be asserting a fraudulent joinder claim albeit titling the claim fraudulent misjoinder. The most charitable reading of Angera's assertion, based on the claim in the Notice of Removal that "[Tikal] has been dissolved and has been fraudulently misjoined," is that Tikal's dissolution February 7, 2018, caused it to have been fraudulently joined to an action served ten days earlier. Even ignoring the hornbook law that a limited liability company continues to exist post-dissolution for purposes of defending lawsuits against it, it defies common sense for dissolution of a party in February to cause the fraudulent joinder of that party to a Connecticut proceeding in the preceding month. Contrary to his assertions; Doc. 12 at 2, ¶ 3; it is Angera who is engaged in "gamesmanship" by having knowingly dissolved Tikal after the underlying proceedings were served upon the parties in an apparent attempt to manipulate the courts.

Angera's unsupported, unanalyzed claims of fraudulent joinder certainly do not rise to the level of meeting his heavy burden of proving either A) fraud in the pleadings or B) no possibility, based on the pleadings, that Sea Greens would have a cause of action against Tikal or any other defendant in state court. Indeed, there is no analysis of the pleadings from Angera whatsoever. There certainly cannot be a claim now that Tikal was somehow fraudulently joined

12

in order to defeat diversity jurisdiction. Indeed, the claim is so absurd that it serves as more evidence of the gamesmanship in which Angera engages, knowingly dissolving Tikal post-service in an attempt to manipulate the court's own processes to his own ends.

The fraudulent misjoinder doctrine, which was cited by Angera, differs from fraudulent joinder in several critical respects. Critically, fraudulent misjoinder involves a situation by which

> "a diverse defendant argues that a plaintiff has added claims to the complaint—either claims by other non-diverse plaintiffs or claims against other non-diverse defendants—which, although perhaps valid, are nevertheless not properly joined under the applicable permissive joinder rules." Keune v. Merck & Co. (In re Propecia (Finasteride) Prod. Liab. Litig.), No. 12-MD-2331 (JG) (VVP) 2013 U.S. Dist. LEXIS 117375 at *34-35 (E.D.N.Y. May 17, 2013) (attached in Appendix).

A claim of fraudulent misjoinder is analyzed pursuant to state-law rules of joinder of claims. Id. at *60-63; see also Flores v. Merck & Co. (In re Fosamax Prods. Liab. Litig.), No. 1:06-MD-1789 (JFK), 2008 U.S. Dist. LEXIS 57473 (S.D.N.Y. July 28, 2008) (attached in Appendix); Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F.Supp.2d 357, 381 (S.D.N.Y. 2006). Again, Angera has presented absolutely no analysis of how any of the claims against any of the Defendants were allegedly improperly joined to this cause of action.

In fact, the pleadings allege that Tikal acted jointly and severally with Angera in conducting the breach, fraud, misappropriation of trade secrets, and other bad acts alleged in the complaint. Furthermore, one of the prayers for relief is disgorgement specifically against Tikal for improperly-submitted business expenses paid by the Plaintiff, and the other claims of relief are against all Defendants and therefore include Tikal. In Connecticut, a court may join a party as a defendant "if that person has or claims an interest in the controversy or any part thereof adverse to the plaintiff." Conn. Gen. Stat. § 52-102(1). Since Tikal certainly has an interest,

during the winding up phase, in defending itself against claims of joint and several liability for various bad actions, it is certainly a proper party to this matter. Any claim of fraudulent misjoinder would also likewise fail.

### *V.*  *Supplemental Jurisdiction in this Matter is Improper*

As the Court noted in its Order to Show Cause, supplemental jurisdiction is not sufficient to establish federal jurisdiction over a matter absent original jurisdiction. As discussed above in detail, the Court does not have diversity jurisdiction, and therefore supplemental jurisdiction would be improper as well. Furthermore, Angera's claim of supplemental jurisdiction is predicated on the existence of *Angera v. Greenwave et al.*, 3:17-01613. That matter is subject to pending motions to dismiss that include similar jurisdictional defects—lack of complete diversity—among other claims. Jurisdictional discovery is ongoing in that matter. It would be improper for the Court to exercise supplemental jurisdiction over this matter given the high likelihood of dismissal of that action, which also does not belong in federal court.

### *VI.*  *The Court Should Award Costs and Attorney Fees against Angera for Improper Removal*

An order of remand may require payment of just costs and actual expenses, including attorney fees, incurred as a result of removal. 28 U.S.C. § 1447(c). The standard for awarding fees pursuant to § 1447(c) turns on the reasonableness of the removal; absent unusual circumstances, fees may be awarded under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The facts of this attempted removal show that there was no objectively reasonable basis for removal, and in fact show that the Notice of Removal was filed in a bad-faith attempt to derail this litigation, drive up the Plaintiff's legal fees, and increase delay for the Defendants' own purposes.

In this case, Angera, an attorney licensed in New Jersey and Pennsylvania with experience in federal practice (see Ex. G), has made a number of outright misrepresentations of fact, ignored his own statements indicating a lack of diversity jurisdiction, and failed to present even the most basic legal analysis of any claim for removal. Angera has:

- Signed legal memoranda—the Response to Order to Show Cause—on behalf of two Maine companies, Exchange and Springtide, as their General Counsel, despite not being permitted to practice law in the State of Maine [Doc. 12];
- Claimed that diversity is complete, despite acknowledging in his untimely Statement Required by Local Standing Order[8] that diversity is incomplete by stating:
    - that Sea Greens, Exchange, and Springtide have Maine members [Doc. 9 at 1, ¶ 3];
    - Sea Greens has a Connecticut member and Tikal is a Connecticut limited liability company [Doc. 9 at 1, ¶ 3];
- Represented to the Court that there were no pending motions at the state court in the Notice of Pending Motions [Doc. 10], despite the fact that the underlying matter is a prejudgment remedy application with a pending evidentiary hearing and a motion to disclose assets, both of which would need to be acted on by this Court if the Court declines to remand this matter. See Ex. H;[9]

---

[8] Per the Court's Standing Order on Removed Cases, the Statement was required to be filed no later than February 20, 2018. It is dated March 1, 2018, and was filed March 5, 2018, and was therefore untimely filed. No explanation for the untimely filing has been given.

[9] For the convenience of the Court, a copy of the underlying motions and associated notices and orders related to the prejudgment remedy application are attached hereto as Exhibit H.

- Ignored hornbook law that Tikal, like any other limited liability company, continues to exist for purposes of defending lawsuits following dissolution under Conn. Gen. Stat. §§ 34-208(b) (repealed as of July 1, 2017); 34-267a(b) (effective as of July 1, 2017);

- Argued that removal of this matter was appropriate based on the wholly-inapposite <u>Terral</u> and <u>Colorado River</u> cases with no legal analysis whatsoever [Doc. 12 at 2-3];

- Claimed that parties were fraudulently joined and/or misjoined with no legal analysis whatsoever [Doc. 12 at 1-2, ¶ 3]; and

- Claimed improper service and lack of service without any analysis of any of the many ways by which Angera, Tikal, and the other Defendants were served, or even acknowledging that such service occurred.  To the contrary, Angera improperly perpetuated his baseless claim that Plaintiff caused a false return of service to be filed.  <u>See</u> Doc. 9 at 4, ¶ 5.

At no point has Angera provided any objectively reasonable basis for removal.  Indeed, Angera's own statements indicate that Angera was fully aware at the time of removal that complete diversity did not exist.  Angera certainly has not met his high burden of proving that any parties were fraudulently joined or misjoined.  In fact, he hasn't even attempted to do so, instead relying on vague assertions despite unambiguous, well-settled law concerning the effect of dissolution.  Costs and attorney fees should therefore be awarded to the Plaintiff against Angera in the amount of $8,095.00, as shown on the Affidavit of Legal Fees attached as Ex. I, and this matter should be remanded to state court for further proceedings.

## **CONCLUSION**

This removal was done in violation of the Court's own standing orders on the process of removal, which the Court itself has acknowledged in its Order to Show Cause.  Attorney

Angera's responsive filings cut against the very essence of his claim for removal, acknowledging instead that diversity is incomplete and therefore removal is inappropriate. This is exacerbated by a total dearth of legal analysis, or even acknowledgment of the applicable law governing removal. In fact, Angera's filings admit outright that the Notice of Removal was filed without any objectively reasonable basis. This matter should be remanded, and costs and attorney's fees awarded against Angera and Tikal (his admitted alter ego) to be paid by a date certain.

        THE PLAINTIFF
        SEA GREENS HOLDINGS, LLC

        By: /s/ Philip Gupta Kent
        Philip Gupta Kent (CT27297)
        Susman, Duffy & Segaloff, PC
        P.O. Box 1684
        New Haven, CT 06507
        203-624-9830
        Fax: 203-562-8430
        Email: pkent@susmanduffy.com

## CERTIFICATION

I hereby certify that on March 14, 2018, a copy of this Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

        /s/ Philip G. Kent
        Philip G. Kent (ct27297)